JAMES T. TRACY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tracy v. Commissioner
Docket No. 2773-71.
United States Tax Court
T.C. Memo 1973-28; 1973 Tax Ct. Memo LEXIS 259; 32 T.C.M. (CCH) 102; T.C.M. (RIA) 730028; February 6, 1973, Filed James T. Tracy, pro se. Howard L. Williams, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $380.57 in petitioner's Federal income tax for the year 1967. This was based on the ground that petitioner's wife, Patricia M. Tracy, was a nonresident alien of the United States in 1967 and, therefore, the 2 petitioner was not entitled to file a joint Federal income tax return with his wife for that year. In his original and amended petitions filed in this proceeding, the petitioner claimed an overpayment of $1,022, alleging that in 1967 he was a legal resident of California, a community property State, while working in Germany as a civilian engineer for the United States Army; that the United States Government nullified the intent of his *260 wife to return to the United States by declaring her a nonresident alien; and that, consequently, he is liable for Federal income taxes on only one-half of their community income. In his answer to the amended petition, the respondent admitted that he erred in determining the 1967 income tax deficiency of $380.57 because the petitioner's wife was a resident alien during the taxable year 1967; and respondent alleged that the petitioner is not entitled to the claimed overpayment for that year.
We must decide whether Patricia M. Tracy was a resident or non-resident alien of the United States during the taxable year 1967. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. James T. Tracy (herein called petitioner) resided in Springfield, Virginia, when he filed his petition and amended petition in this 3 proceeding. Petitioner is married to Patricia M. Tracy and they presently live together as husband and wife at 7715 Harwood Place, Springfield, Virginia. They timely filed a joint Federal income tax return for the year 1967 with the Office of International Operations of the Internal Revenue Service. Petitioner, his wife *261 and one child entered the United States from Canada as immigrants on May 22, 1956. They were admitted as permanent resident aliens, and resided in the United States until 1965. From 1960 until December 1965 the petitioner and his family lived in California, a community property State. Petitioner became a naturalized citizen of the United States on December 19, 1961. Patricia M. Tracy could not qualify as a naturalized citizen because of various visits she made to Canada. In 1965 the petitioner accepted a job (under a three-year contract) as a civilian electronic engineer with the United States Army and was to be stationed to Germany. In November 1965 he left his home in California and traveled to Germany. His wife and four children left the United States on December 15, 1965, to join him there. Petitioner signed a transportation agreement on June 27, 1966, which provided, in part, as follows: It is agreed and understood that the following conditions prevail in connection with my eligibility for transportation at Government expense to the post of 4 employment outside the continental limits of the United States and return to place of actual residence at time of such *262 employment. a. I agree that I will remain in the employ of the Department of the Army in the area in which I am assigned or reassigned for at least 29 months beginning with the date of arrival at my permanent duty station. b. I agree that if I voluntarily separate from my employment with the Department of the Army prior to completion of 12 months of service, or if I am involuntarily separated for misconduct prior to completion of 12 months of service, I will reimburse the Government for all expenses incident to my travel and transportation including that of my dependents, household goods and personal effects, if applicable, to the overseas post of duty unless reasons for voluntary separation are acceptable to the employing command. c. I fully understand that I will not be eligible for return transportation at Government expense to my place of actual residence at time of my appointment until I have remained the full period specified in a. above and that I will be responsible for my own transportation and that of my dependents, household goods and personal effects, if applicable, if I separate voluntarily or if I am separated involuntarily because of misconduct prior to completion *263 of such period of employment unless reasons for voluntary separation are acceptable to the employing command. Petitioner's wife applied for and received a re-entry permit for a resident alien before leaving the United States for Germany. The re-entry permit expired on December 2, 1966, and she did not apply for an extension. Sometime in the fall of 1967 the petitioner requested that he be permitted to terminate his employment agreement with the Army as 5 of December 31, 1967, and asked that he and his family be returned to Anaheim, California. He did not wish to register in the Army career program and was therefore denied a promotion. His request was turned down and he was informed that the civilian personnel office was not authorized to renegotiate the transportation agreement. Petitioner, his wife and children continued to live in Germany until their departure for the United States in November 1968. And during this time the petitioner worked as an engineer for the United States Army.
In July 1968 the petitioner, knowing that he would be returning to the United States in November, began taking steps to obtain the required re-entry papers for his wife and son. Contracts *264 were made with the USAREUR Headquarters in Heidelberg, the Civilian Personnel Office there, and the United States Consulate in Frankfurt. He visited the Consulate in Frankfurt about twice a week from August to October, but his efforts were unsuccessful. Mrs. Tracy and her son were denied immediate re-entry into the United States. Frustrated by the actions of the Consulate, the petitioner engaged in a heated conversation with German members of the Consulate on October 22, 1968. This resulted in his wife and son being processed for a visa along with other foreign nationals. They were subjected to various medical examinations and language tests. They also had to obtain German 6 character references and demonstrate monetary capability for living in the United States. Petitioner and his family made another visit to the Consulate in Frankfurt on November 19, 1968, and his wife made application for a visa. On that same day Mrs. Tracy was granted a returning resident visa (an SB I classification). On November 27, 1968, the petitioner, his wife and children left Germany for the United States. Patricia M. Tracy did not work while she was in Germany. She lived in United States *265 Government housing while there. She did not file an income tax return with any country other than the United States. It was the intention of the petitioner and his wife to return to the United States upon the completion of his employment contract with the United States Army in Germany. Patricia M. Tracy took no action at any time to disavow or abandon her status as a permanent resident alien of the United States. She finally became a naturalized citizen of the United States in 1972. ULTIMATE FINDING Patricia M. Tracy was a resident alien of the United States for the taxable year 1967. 7 OPINION The issue confronting us is factual; and, considering the facts and circumstances present here, we conclude that Patricia M. Tracy was a resident alien of the United States for the taxable year 1967. Our ultimate finding of fact so reflects. Of prime importance is the intent of Mrs. Tracy. Walter J. Baer, 6 T.C. 1195, 1198 (1946). [1] Absence from the United States for a long period of time does not, by itself, change a resident alien's status for Federal income tax purposes. Josette J. F. Verrier Friedman, 37 T.C. 539, 552 (1961). Once an *266 alien has established residence in the United States, such status as a resident alien continues until it is shown to have been abandoned. See section 1.871-5, Income Tax Regs.
Here the circumstances surrounding Mrs. Tracy's departure from the United States and the admission of her intention to return to this country show that she did not intend to, nor did she in fact, abandon her status as a resident alien. Clearly she was a resident alien of the United States at the time of her departure for Germany. She had entered the country as a permanent resident alien and lived here with her husband for nine years. Her departure was dictated by the 8 employment contract which the petitioner had with the United States Army. He was stationed in Germany and was under a three-year employment obligation. Petitioner acknowledged that the intention of the wife, at the time of her departure and during the time she resided in Germany, was to return to the United States upon the completion of his employment contract. During her stay in Germany Mrs. Tracy did not take any action to disavow her *267 status as a resident alien of the United States. She joined with her husband in filing a joint Federal income tax return with the Internal Revenue Service. She did not file a tax return with any other country. Petitioner and his wife lived in United States Government housing while they were in Germany. In July 1968, near the end of the petitioner's employment contract, he and his wife started the processing for their return to the United States. It was, at this point, that his wife incurred considerable difficulty in returning to the United States. But all of her actions prior to and including the processing for her return to this country indicate a clear intention of returning to the United Stated and retaining her status as a resident alien. Petitioner contends that his wife's intention to remain a resident alien was nullified by the action of the Department of Immigration and Naturalization in refusing her immediate re-entry into the United States. 9 He also contends that the transportation agreement between himself and the Army provides for the return of his wife and family at the termination of his overseas employment. Both of these contentions overlook the fact *268 that his wife was required to comply with the immigration laws and regulations of the Department of Immigration and Naturalization for admission into the United States. 8 U.S.C. §1181 (1970). Petitioner says that no reason was given for the refusal of immediate re-entry for his wife. We think it is reasonable to assume that the refusal was because of Mrs. Tracy's failure to have the necessary and appropriate papers at the time of attempted re-entry. She had been outside the United States from the date of her departure on December 15, 1965. Aliens who are outside the United States for continuous periods of more than two years are required to have a visa for their re-entry into the United States. 8 U.S.C. §§1181, 1203 (1970). At the time of the petitioner's processing for return, his wife was not in possession of a visa. If an alien does not have the appropriate papers, he may be excluded at the time of attempted re-entry. 8 U.S.C §1182(a) (2) (1970). The fact that the immigration authorities refused immediate re-entry to Mrs. Tracy was not conclusive as to her re-entry. She was required to comply with the *269 regulations of the Department of 10 Immigration and Naturalization. She was eventually granted a visa permitting her to re-enter the United States. Petitioner's testimony indicates that he did not attempt to obtain a "visa" for his wife until late October 1968. It is not clear why there was a delay in making application for the visa after his initial processing request was denied. The immigration records of his wife show that the visa was granted on November 19, 1968, the same day that the application was completed. However frustrated the petitioner may be with the vast tenacles of the Federal bureaucracy and its amalgam of regulations, procedures and practices, or however disillusioned he may be with the shabby treatment he feels his wife and son received from the United States Consulate in Frankfurt, the facts remain that Mrs. Tracy intended to (1) return to the United States and (2) retain her status as a resident alien. She was not merely a sojourner or transient, i.e., a non-resident alient. Patricia M. Tracy made application for and was granted a visa by the American consul in Germany. The visa she received was a returning resident visa. This is a special immigrant *270 visa specifically provided for in 8 U.S.C. 1204 (1970) and defined in 8 U.S.C. 1101(a) (27) (B) (1970): An immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad. 11 This type of visa is for those individuals who are outside the United States for a continuous period of more than two years and cannot or do not meet the requirements for a re-entry permit. In order to obtain this type of visa one must meet its requirements of being a permanent resident alien of the United States and be returning from a temporary visit abroad. Mrs. Tracy made application for and received this type of visa. The Department of Immigration and Naturalization, by granting a returning resident visa, considered her to be a resident alien of the United States. Such determination is binding. Josette J. F. Verrier Friedman, supra at 555 and 556; and L. E. L. Thomas, 33 B.T.A. 725 (1935). Accordingly, we hold on this record that the petitioner's claim for an overpayment of $1,022 must be denied because Patricia M. Tracy was a resident alien of the United States for the taxable year 1967. *271 A decision of no deficiency and no overpayment will be entered. Footnotes
1. See also Court J. Beisinger, T.C. Memo. 1968-146↩.